# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

**JOSEPH T. DURKIN,**

   **Petitioner,**

**v.**                                    **Case No.  5:11cv365/MP/CJK**

**MICHAEL D. CREWS,**

   **Respondent.**

_____/

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 20; Doc. 33 (volume I of the state postconviction record consisting of pages 1-157, which was inadvertently omitted from Doc. 20)).  Petitioner replied.  (Doc. 30).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas

relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

In April of 2006, petitioner was charged by second amended information filed in the Circuit Court for Bay County, Florida, Case Number 05-CF-3266, with three counts of trafficking in a controlled substance (Count I – Hydrocodone; Count II – Codeine; and Count III – Amphetamines), three counts of possession of a controlled substance with intent to sell/deliver (Count IV – Methylphenidate; Count V – Propoxyphene; Count VI – Clonazepam), one count of possession of a new or legend drug without a prescription (Count VII – Ciprofloxacin), one count of driving while license suspended or revoked (Count VIII), and one count of possession of drug paraphernalia (Count IX). (Doc. 20, Ex. A, pp. 27-28).[1] After a jury trial, (ex. B), petitioner was found guilty of all counts as charged. (Ex. A, pp. 38-40; Ex. B, pp. 201-03). On April 26, 2006, petitioner was adjudicated guilty on all counts and was sentenced to twenty-five years imprisonment on Count I, twenty-five years imprisonment on Counts II and III to be served concurrently with the sentence on Count I, five years imprisonment on Counts IV, V and VI to be served concurrently with the sentence on Count I, and time served on Counts VII, VIII and IX. (Ex. B, pp. 45-59). Judgment was entered that date. (*Id.*). Petitioner's judgment of conviction was affirmed on direct appeal without a written opinion. *Durkin v. State*, 953 So. 2d 521 (Fla. 1st DCA 2007) (Table) (copy at Ex. F).

On November 8, 2007, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising two grounds for relief (Grounds One and Two). (Doc. 33, Ex. G, pp. 1-15). Petitioner's Rule 3.850 motion

---

[1]All references to exhibits are to those provided at Doc. 20, unless otherwise noted.

was later amended to add Ground Three (*id.*, pp. 63-71), amended again to add Grounds Four and Five (*id.*, pp. 90-99), and amended again to add Ground Six (*id.*, pp. 122-31). The state circuit court summarily denied Grounds One and Two on the merits in an order rendered January 25, 2008 (*id.*, pp. 37-62); and summarily denied Grounds Four and Five on the merits in an order rendered June 23, 2009 (doc. 20, Ex. G, pp. 330-32; *see also* p. 507). The state court set an evidentiary hearing on Grounds Three and Six, and appointed counsel to represent petitioner. (Doc. 33, Ex. G, pp. 84, 89, 137-38). After holding an evidentiary hearing on February 5, 2010 (doc. 20, Ex. H), the state circuit court denied relief on Grounds Three and Six in a written order issued March 10, 2010 (doc. 20., Ex. G, pp. 527-28). The Florida First District Court of Appeal ("First DCA") affirmed the denial of postconviction relief, without a written opinion. *Durkin v. State*, 53 So. 3d 1025 (Fla. 1st DCA 2010) (Table) (copy at Ex. J). The mandate issued February 14, 2011. (Ex. M).

On October 1, 2010, petitioner filed another *pro se* motion for postconviction relief under Fla. R. Crim. P. 3.850. (Doc. 20, Ex. N, pp. 1-23). The state circuit court struck the motion with leave given to file an amended motion. (*Id.*, p. 31). Petitioner filed an amended motion on December 16, 2010. (*Id.*, pp. 55-68). The state court denied the motion. (*Id.*, pp. 69-70). The First DCA affirmed without a written opinion, *Durkin v. State*, 64 So. 3d 1264 (Fla. 1st DCA 2011) (Table), with the mandate issuing July 12, 2011. (Doc. 20, Exs. P, S).

Petitioner filed his original federal habeas petition in this Court on November 7, 2011. (Doc. 1, p. 1). Respondent asserts that petitioner is not entitled to relief on any of his claims, because some of them are procedurally defaulted and all of them are without merit. (Doc. 20).

# APPLICABLE LEGAL STANDARDS

## Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[2] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526

---

[2]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)  there is an absence of available State corrective process; or

      (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw*

*v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower* , 7 F.3d at 210. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied"

the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See*

*Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

Ground One   "Petitioner's Right To Due Process Of Law Was Violated When The Jury Found Him Guilty Of A Crime He Was Not Charged With Committing" (Doc. 1, continuation p. 1).

Petitioner claims his conviction on Count II (trafficking in Codeine) violates due process because he was charged only with trafficking in "morphine, opium, oxycodone or any salt derivative, isomer, or salt of an isomer thereof, including heroin . . .", which does not mention codeine. Respondent concedes that petitioner exhausted this claim by raising it on direct appeal, but asserts that petitioner is not entitled to federal habeas relief because he cannot establish that the appellate court's denial of relief was contrary to, or unreasonably applied, clearly established Federal law, or was based on an unreasonable factual finding. (Doc. 20, pp. 30-32).

A.   Clearly Established Federal Law

"Conviction upon a charge not made would be sheer denial of due process." *De Jonge v. Oregon*, 299 U.S. 353, 362, 57 S. Ct. 255, 81 L. Ed. 278 (1937); *accord Stirone v. United States*, 361 U.S. 212, 217, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960) (reiterating that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him."); *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.").

B.   Federal Review of State Court Decision

The First DCA's summary rejection of petitioner's claim on direct appeal is due deference under 28 U.S.C. § 2254(d). *See Richter*, 131 S. Ct. at 784-85; *Cullen*

*v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011).  Under § 2254(d)(1), the question is whether the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Because the First DCA's decision was summary in nature, petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for [its] decision." *Cullen*, 131 S. Ct. at 1402 (*quoting Richter*, 131 S. Ct. at 786).  The duty of a federal habeas court in these circumstances is clear and was clearly restated by the Supreme Court in *Cullen*: "[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Cullen* at 1402 (*quoting Richter*, 131 S.Ct. at 786).  Petitioner fails to meet that high threshold.

Count II of the second amended information charged petitioner with trafficking in a controlled substance.  The second amended information alleged that petitioner:

> did unlawfully and knowingly sell, manufacture, deliver, or bring into the State of Florida, or was in actual or constructive possession of 28 grams or more of any morphine, opium, oxycodone or any salt, derivative, isomer, or salt of an isomer thereof, including heroin, as described in Florida Statute 893.03(1)(b) or (2)(a), or 4 grams of more of any mixture containing any such substance, contrary to Florida Statute 893.135(1)(c)1c.

(Doc. 20, Ex. A, p. 27).  The charging document expressly referenced "opium" and expressly incorporated the drugs under Fla. Stat. § 893.03(2)(a).  (Ex. A, p. 27). Section 893.03(2)(a) criminalizes "[o]pium and any salt, compound, derivative, or

preparation of opium, except nalmfene or isoquinoline alkaloids of opium, including, but not limited to the following . . . ," whereupon the statute lists several different forms of opium including, under subsection 893.03(2)(a)(1)(g), "Codeine." Thus, under the statute, Codeine is a form of opium.

During the course of the trial, the State specified that Count II was intended to apply specifically to petitioner's trafficking in Codeine. (Ex. B, pp. 15, 150, 169-70, 177). The State explained that under the statute Codeine is a form of opium. (Ex. B, pp. 15-16, 138). The State also presented expert testimony that Codeine is an opiate. (*Id.* p. 135); *see also Turner v. United States*, 396 U.S. 398 (1970) (noting that Codeine can be derived from opium); *Bradford v. United States*, 271 F. 2d 58, 60 (9th Cir. 1959) (noting that Codeine is a "derivative of opium"). The drug Codeine was clearly listed on the verdict form for Count II. (Ex. A, p, 11). As the term opium was clearly used in Count II of the charging document, and as the statute defining the several forms of opium was expressly declared in Count II of the charging document, it cannot be said that petitioner was not charged, under the language of Count II, with trafficking in Codeine.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two          "Petitioner's Right To Due Process Of the Law Was Violated
                    When The Trial Court Failed To Define 'New Or Legend Drug'
                    As It Related To The Charge In Count VII Of The Information".
                    (Doc. 1, continuation p. 4).

Petitioner claims the trial court violated his right to due process by failing to
define the term "new or legend drug" as part of the jury instructions regarding
petitioner's possession of Ciprofloxacin. (Doc. 1, continuation pp. 4-5). Respondent
asserts a procedural default defense, arguing that the First DCA's summary rejection
of petitioner's challenge to the jury instructions on direct appeal was based on state-
law procedural principles (petitioner's failure to comply with Florida's rule requiring
that a request for a special jury instruction be submitted in writing to the trial court,
and Florida's rule requiring that jury instruction issues be preserved for appeal by
objection below).   Respondent argues that because petitioner fails to make the
requisite showing to excuse his procedural default, Ground Two is barred from
federal habeas review.   (Doc. 20, pp. 33-39).   Petitioner responds that he has
established cause and prejudice for his procedural default, because "when a trial court
gives an incomplete and inaccurate instruction on the law, a defendant's
constitutional right to a fair trial is violated."  (Doc. 30, p. 4).

    A.    Exhaustion and Procedural Default

In *Richter*, the Supreme Court held:  "When a federal claim has been presented
to a state court and the state court has denied relief, it may be presumed that the state
court adjudicated the claim on the merits in the absence of any indication or state-law
procedural principles to the contrary."  *Richter*, 131 S. Ct. at 784-85.  The *Richter*
Court noted that "[t]he presumption may be overcome when there is reason to think
some other explanation for the state court's decision is more likely", and cited to

*Ylst*'s pass-through rule. *Richter*, 131 S. Ct. at 785 (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.")). Here, there has been no "reasoned state judgment" at the state trial or appellate court level, because petitioner never raised the issue before the trial court, and the First DCA's affirmance is silent as to its reasoning. The totality of the circumstances leads this Court to conclude that the First DCA did not "adjudicate[ ]" petitioner's jury instruction claim "on the merits", *see Richter*, 131 S. Ct. at 784-85, but instead rejected petitioner's claim as procedurally barred due to petitioner's failure to comply with Florida's preservation rule.[4]

Florida law provides: "No party may raise on appeal the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds for the objection." Fla. R. Crim. P. 3.390(d). At the time of petitioner's trial, Florida apparently had no standard jury instruction for the crime of possessing a new or legend drug. (*See* Doc. 20, Ex. B, pp. 146, 151). The trial judge asked the State to submit a proposed instruction. (*Id*., p. 146). The following discussion ensued:

> MR. MEREDITH [defense counsel]: Judge, one thing, I have had a chance to review the proposed jury instruction for Count VII.

---

[4]Although it appears that petitioner's direct appeal did <u>not</u> present a <u>federal due process</u> claim concerning the jury instruction but merely a state law claim (petitioner's initial brief did not say, or even suggest, that the claim was a federal claim about due process, *see* doc. 20, ex. C, pp. I, 6, 12-14), respondent's procedural default defense does not rely on this theory, so the Court will not address it.

THE COURT:  You have or have not, I can't hear you?

MR. MEREDITH:  I have, . . . I have.  My one question, and I am not sure because there's not any standard jury instruction, is that as they proposed it, the –

THE COURT:  I haven't seen it either, it would be helpful if I could see it.

MR. MEREDITH:  I mean, if there's a finding that the Cipro is a newer [sic] legend drug, I am just wondering if it's something the jury should decide.

THE COURT:  All right, I don't think I agree with you on that.  I think we can say Cipro is a drug, but I don't think we can put that finding is that it's a legend or prescription drug.  We are gonna have to say that number four, maybe number, whatever you want to do, is going to need to say Cipro is a legend or prescription drug, that the State has to prove, I agree.

MS. BOWMAN [prosecutor]:  I am sorry, Your Honor, I didn't understand the last part.

THE COURT:  It will have to be one of the elements, have to have four elements.  Maybe ought to be number three, substance was Cipro, number three, Cipro is a legend or prescription drug.

MS. BOWMAN:  I think where we are getting it from, Your Honor, is through the trafficking, possession with intent, and just simple possession.  The first line of each one is certain drugs and chemical substances are by law known as controlled substances, and then we're supposed to put in the name, like Hydrocodone, or any mixture containing Hydrocodone, as a controlled substance.

THE COURT:  I understand that, but you are taking away one of the elements that the State would have to prove.  They have to prove it's a

legend or prescription drug. I am going to make that modification because it's just like these cases, you obviously have not read some of these things about what juries have to find, and there's one about age of a person over or under 18, the jury has to, State has to prove that, you can't just say the person was, even though we probably know, so I will take that out. We are just gonna put down Cipro is a drug, and that's all we can say. Do you have any problem with that?

MR. MEREDITH: No, Judge.

THE COURT: I will put Cipro is a drug. Number three, Cipro is a legend or prescription drug as something that the State must prove. Four, the Defendant had knowledge of the presence of the substance, and then we will do the rest of it. That avoids the argument of taking away from the jury a finding that they need to take.

(Doc. 20, Ex. B, pp. 151-53). Defense counsel did not object or suggest that the trial court should define the term "new or legend drug" as part of the jury instructions. (*Id*.). Thus, the only issue petitioner raised with regard to the jury instruction on Count VII was a suggestion that the issue of whether Cipro was a new or legend drug was an element of the crime and a matter of fact for the jury to decide. The judge's instructions to the jury on Count VII were:

I will now instruct you as to Count VII. Certain drugs and chemical substances are known as legend or prescription drugs. Cipro is a drug. In order to prove the crime of possession of a legend or new drug, the State must prove the following four elements beyond a reasonable doubt:

Number one, the Defendant possessed a certain substance.

Number two, the substance was Ciprofloxacin.

Number three, Ciprofloxacin is a legend or prescription drug.

Number four, the Defendant had knowledge of the presence of the substance.

Possess again means to have personal charge of or exercise the right of ownership, management, or control over the thing possessed. As I previously informed you, possession may be actual or constructive.

Actual possession means the thing is in the hand of, or on the person, or the thing is in a container in the hand of, or on the person, or the thing is so close as to be within ready reach and is under the control of that person. And again I previously informed you and told you about constructive possession, the same rules apply to Count VII as to that.

(Doc. 20, Ex. B, p. 183-84). Upon realizing that the instruction failed to address the element concerning petitioner's not having a prescription for the Cipro, the judge issued a corrected instruction:

THE COURT: [A]s to the Cipro, Count Number VII, possession of a new or legend drug without a prescription, there's another element that the State is required to prove. There's actually five elements. It would be, number one, the Defendant possessed a certain substance.

Number two, the substance was Cipro.

And, number three, Cipro is a new or legend drug.

Number four, the Defendant did not have a prescription for that drug.

And, number five, the Defendant had knowledge of the presence of the substance.

I previously explained to you what possession means, so I hope that's understandable.

(*Id*., pp. 197-98). Defense counsel did not object to the final instruction on Count VII. (*See id.*, pp. 196-98).

The parties do not dispute (and the record excerpts above establish) that petitioner did not object to the trial court's failure to include a definition of "new or legend drug" in the jury instructions. (Doc. 20, Ex. B, pp. 183-84, 196-97; *see also* petitioner's direct appeal brief at Ex. C, p. 12 (acknowledging the absence of objection at trial)). Petitioner sought to overcome his failure to preserve the issue by arguing on direct appeal that the failure to define "new or legend drug" was fundamental error. (Doc. 20, Ex. C, pp. 6, 12-14). The State argued that petitioner could not demonstrate fundamental error. (*Id.*, Ex. D, pp. 13, 18-24).

"Under Florida law, an error in a jury instruction is only reviewed for fundamental error if the claim was not properly preserved." *Torres v. Sec'y, Dep't of Corr.*, 336 F. App'x 924, 927 (11th Cir. 2009) (*citing Hernandez v. State*, 919 So.2d 707, 710 (Fla. 5th DCA 2006), *and Lane v. State*, 861 So.2d 451, 453 (Fla. 4th DCA 2003)); *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 774 n.6 (11th Cir. 2003) (noting that "[a] failure to object at trial is forgiven when the error is fundamental under Florida law."). As the State argued on direct appeal, petitioner could not satisfy the fundamental error standard, because Cipro is a prescription drug and therefore a "legend drug" as a matter of law. *See* Fla. Stat. § 499.003(25) (2005) (using the terms "legend drug" and "prescription drug" synonymously and defining them as "any drug, including, but not limited to, finished dosage forms, or active ingredients subject to, defined by, or described by section 503(b) of the Federal Food, Drug, and Cosmetic Act or section 465.003(8) . . ."); 21 U.S.C. § 353(b) (codification of § 503(b) of the Federal Food, Drug, and Cosmetic Act which describes the nature of drugs that require a prescription); Fla. Stat. § 465.003(8) (2005) (defining "legend" and "prescription" drugs synonymously as drugs that are "required by federal or state law to be dispensed only on a prescription.").

Even if the issue (whether Cipro was a new or legend drug) was a question of fact, petitioner still could not satisfy the fundamental error standard because neither the illegality of possessing Cipro without a prescription, nor Cipro's classification as a legend/prescription drug, was a disputed issue below. *State v. Delva*, 575 So. 2d 643, 645 (Fla. 1991) ("Failing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error and there must be an objection to preserve the issue for appeal."); *Reed v. State*, 837 So. 2d 366, 369-70 (Fla. 2002). The only theory of defense was that the evidence was insufficient to prove that petitioner (as opposed to his co-defendant) possessed the drug. (Doc. 20, Ex. B, p. 137 (arguing for a judgment of acquittal on all drug charges on the grounds that "[t]here's nothing in the evidentiary record that shows that Mr. Durkin was ever in possession of the pills that are at issue or the bottles. The evidence is he was in close proximity to it but there's nothing else, based on that, that evidence alone, that is insufficient for a jury to find him guilty of any of the drug or the paraphernalia charges.").

As a final point, petitioner could not establish fundamental error because the jury instruction given did not misstate the law or mislead the jury. Florida courts have not found fundamental error where a jury is instructed that the State must prove each element of a crime beyond a reasonable doubt, even though the instruction did not define a particular term. *See generally State v. Wilson*, 686 So.2d 569 (Fla. 1996) (no fundamental error where instructions failed to define the term "reasonable doubt"); *Cardenas v. State*, 867 Fo.2d 384, 392 (Fla. 2004) (no fundamental error where a failure to instruct results in neither an omission from the definition of the offense one of the essential elements of the crime, nor misdefines one of the essential elements of an offense). There is no dispute that the jury was instructed on all

elements of the offense. (Doc. 20, Ex. B, pp. 183-84).

In light of the foregoing, respondent has rebutted the presumption that the First DCA's summary rejection of petitioner's claim was on the merits, by showing that it is more likely the First DCA rejected petitioner's claim as procedurally barred due to petitioner's failure to comply with Florida's preservation rule. The parties' sole reliance on the fundamental error standard in arguing the issue on appeal, when coupled with the parties' acknowledgment on appeal that counsel did not request the instruction or object to the lack of instruction at trial, indicates that it is more likely the First DCA found petitioner did not properly preserve the issue and rejected petitioner's claim on the grounds of the state procedural bar. *Tower*, 7 F. 3d at 211 (holding that petitioner's claims were procedurally defaulted, where petitioner filed two postconviction motions in Florida state court seeking to vacate his sentence on grounds which were procedurally barred and the state court never ruled on the claims: "[W]e may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."); *see also, e.g., Creed v. Dep't of Corr.*, 330 F. App'x 771, 772 (11th Cir. 2009) ("[W]here the existence of a procedural bar is clear and no state court has given any rationale for its summary disposition of the defendant's claim, we will not presume that 'had the [state court] explained its reasoning, it would have reached the merits of [the defendant's] claim.'" (*quoting Kight v. Singletary*, 50 F.3d 1539, 1545 (11th Cir. 1995))); *Jones v. Sec'y, Dep't of Corr.*, No. 8:12cv1677, 2013 WL 3063717, at *2 (M.D. Fla. June 18, 2013) (finding that state appellate court's summary rejection of due process claim alleging improper jury instruction was based on state procedural bar, where no objection to instruction was raised at trial, petitioner

argued on direct appeal that issue should be reviewed as fundamental error, and state appellate court affirmed without an opinion; concluding that state court's rejection of claim on state procedural principles rendered due process claim procedurally defaulted for federal habeas purposes); *Murray v. Sec'y, Dep't of Corr.*, No. 8:09cv1822, 2012 WL 4482189, at *6-*7 (M.D. Fla. Sept. 26, 2012) (same with regard to prosecutorial misconduct claim); *Kelso v. Tucker*, No. 5:10cv181/RS/CJK, 2012 WL 3113879, at *7-*8 (N.D. Fla. July 6, 2012) (same with regard to claim that State failed to prove essential element of crime beyond a reasonable doubt).

Petitioner's failure to comply with Florida's preservation rule was an independent and adequate basis for the First DCA's decision, and renders petitioner's claim procedurally defaulted for purposes of federal habeas review. Petitioner has not shown cause for his procedural default, nor has he made the requisite showing under *Schlup* to invoke the miscarriage of justice exception. Petitioner's procedural default bars federal habeas review of Ground Two.

Ground Three     <u>"Petitioner's Right To A Fair Trial Was Violated By Trial Court Allowing Collateral Crime Evidence"</u> (Doc. 1, p. 5).

Petitioner claims the trial court's admission of testimony from Confidential Informant Brasher – that petitioner attempted to sell Brasher Cipro and Lortab out of his truck just days prior to petitioner's arrest for the instant drug trafficking and possession offenses –"denied the petitioner his constitutional right to a fair trial" and "deprived petitioner the protection under the Constitution of the United States". (Doc. 1, p. 5 and continuation pages 6-7). Petitioner asserts that he presented this claim to the state court in his direct appeal. (*Id.*, p. 5).

Respondent asserts that petitioner fails to state a claim cognizable on federal habeas review, because the trial court's ruling – that the State could offer evidence

of petitioner's prior offers to sell drugs – is an issue of state law and not a basis for federal habeas review. (Doc. 20, pp. 39-40). Respondent urges that a habeas petitioner cannot transform a purely state law issue into an issue of federal constitutional law by merely citing the Fifth and Fourteenth Amendments. In the alternative, respondent asserts that even if the Court finds that petitioner's mention of the Constitution is sufficient to state a plausible federal constitutional due process claim, the claim is procedurally defaulted because petitioner failed to apprise the state court of the federal constitutional nature of his claim when he challenged the trial court's evidentiary ruling on direct appeal. (*Id*., pp. 41-43).

Even reading petitioner's petition and reply together and liberally construing them as raising a federal constitutional claim, petitioner is not entitled to federal habeas relief, because petitioner did not present a federal due process claim to the state court in his direct appeal – a proceeding in which he was represented by counsel.

To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan, supra*, 513 U.S. at 365-66 (explaining that, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."); *O'Sullivan*, 526 U.S. at 845; *Picard*, 404 U.S. at 277-78 (rejecting the contention that the exhaustion requirement is satisfied when a petitioner presents the state courts only with the facts necessary to state a claim for relief).

Petitioner's summary of the argument in his direct appeal brief asserted that the trial court abused its discretion when it admitted Ms. Brasher's testimony because the testimony was not inextricably intertwined with petitioner's charged offenses (as the

State had claimed); the testimony was irrelevant and unnecessary to prove the charged offenses; and, given the incriminating nature of the testimony, the State could not prove beyond a reasonable doubt that the error was harmless. (Doc. 20, Ex. C, pp. 7-8 (*citing Czubak v. State*, 570 So. 2d 925 (Fla. 1990); *Curry v. State*, 839 So. 2d 887 (Fla. 3d DCA 2003); *Thomas v. State*, 885 So. 2d 968 (Fla. 4th DCA 2004); *and Flores v. State*, 853 So. 2d 566 (Fla. 3d DCA 2003)). In the body of petitioner's appellate brief, counsel argued that Ms. Brasher's testimony was erroneously admitted because the evidence was inadmissible under Fla. Stat. § 90.404(2)(a), and not admissible under Fla. Stat. § 90.402; and that the State could not prove the error was harmless (*i.e.*, that it did not contribute to the verdict). (Doc. 20, Ex. C, pp. 15-19). Petitioner cited exclusively to state law cases, none of which were decided on federal constitutional grounds. Petitioner's direct appeal brief did not say, or even suggest, that his claim was a federal claim about due process. (*Id.*). Accordingly, the state court was not on notice of a Fourteenth Amendment due process claim. *See, e.g., Duncan v. Henry*, 513 U.S. at 365-66 (holding that federal habeas petitioner failed to exhaust claim that state trial court's evidentiary ruling violated the Due Process Clause of the Fourteenth Amendment; petitioner's state law claim that the prejudicial effect of the evidence outweighed its probative value was only somewhat similar to, not the same as, petitioner's federal habeas claim that the evidence was so inflammatory as to prevent a fair trial); *Zeigler v. Crosby*, 345 F. 3d 1300, 1307 (11th Cir. 2003) (holding that federal habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution).

Because any further attempt by petitioner to return to state court to exhaust a federal constitutional claim concerning the admission of Brasher's testimony would be futile, petitioner's unexhausted federal claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. at 735 n. 1, 111 S. Ct. 2546 ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas . . . ." (citations omitted)); *O'Sullivan*, 526 U.S. at 848, 119 S.Ct. at 1734 (stating that where a petitioner has not "properly presented his claims to the state courts," he will have "procedurally defaulted his claims" in federal court); *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar."). Petitioner has not shown cause for his procedural default, nor has he made the requisite showing under *Schlup* to invoke the miscarriage of justice exception. Petitioner's procedural default bars federal habeas review of Ground Three.

| Ground Four | "Trial Court Erred Under The Confrontation Clause In Allowing The State To Play A Tape Recording Of Petitioner's Post-Arrest Conversation With Co-Defendant." (Doc. 1, p. 5). |

Petitioner claims the trial court violated his rights under the Confrontation Clause of the Sixth Amendment when the court allowed the State to play an audiotape of a conversation between petitioner and co-defendant Ms. Pontiff that occurred while the two sat in the back seat of the police car (equipped with audio-recording equipment) just after they were arrested. (Doc. 1, p. 5 and continuation pages 8-9).

Ms. Pontiff did not testify,[5] but the trial court allowed the recording into evidence. The tape involves a heated exchange between Ms. Pontiff and petitioner, which petitioner describes as follows:

> PONTIFF: "You always gotta do the wrong fucking thing;" You're going away for a long time;" "You shouldn't have fucking done it;" I'll probably never see you again;" "Try your best to get me out of this;" "You tell them you put that in my purse;" "You had to fucking do it;" "I cannot believe this is happening."
>
> PONTIFF: And now what's going to happen?
>
> PETITIONER: I'm going to prison.
>
> PONTIFF: And me to, you fuck.

(Doc. 1, continuation page 8; *see also* Ex. C, p. 21 (*citing* State's Exhibit 13)).

Petitioner argues that Ms. Pontiff's statements were incriminating, and that his lack of opportunity to cross-examine her about the statements violated his right of confrontation. Petitioner asserts he presented this claim to the state court in his direct appeal. (*Id.*, p. 5). Respondent responds that petitioner's claim is without merit, because the state court's denial of relief was neither contrary to, nor an unreasonable application of, clearly established federal law. (Doc. 20, pp. 50-53).

A.      Clearly Established Federal Law

The Sixth Amendment protects a criminal defendant's right to confront the witnesses against him. U.S. Const. amend VI. In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the United States Supreme Court

---

[5]Ms. Pontiff was not listed as a witness, apparently because she absconded after being charged in the case. (Doc. 20, Ex. B, p. 82).

clearly established that the Confrontation Clause applies only to testimonial hearsay. *Crawford*, 541 U.S. at 51; *Davis*, 547 U.S. at 823-26; *see also Whorton v. Bockting*, 549 U.S. 406, 420, 127 S. Ct. 1173, 167 L. Ed. 2d (2007) (recognizing that *Crawford* "eliminat[ed] . . . Confrontation Clause protection against the admission of . . . out-of-court nontestimonial statements.). The Court in *Crawford* held that the Sixth Amendment prohibits the introduction of out-of-court testimonial statements against a criminal defendant unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Id.*, 541 U.S. at 53-54, 68, 124 S. Ct. 1354. The *Crawford* opinion cited *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2275, 97 L . Ed. 2d 144 (1987), as an example of a case where non-testimonial statements were properly admitted. *Id.* at 58, 124 S. Ct. at 1368. In *Bourjaily*, the Supreme Court determined that a co-conspirator's unwitting statements to an undercover agent were admissible at trial even though the defendant did not have an opportunity to cross-examine the co-conspirator. *Bourjaily v. United States*, 483 U.S. at 181-84, 107 S. Ct. at 2782-83. The *Crawford* Court "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial'", but stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 68; *see also id.* at 52 (noting that a statement is testimonial if it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.").

B.    Federal Review of State Court Decision

The First DCA's summary rejection of petitioner's claim on direct appeal is due deference under 28 U.S.C. § 2254(d). *See Richter*, 131 S.Ct. at 784-85; *Cullen*,

131 S. Ct. at 1402. Because the First DCA's decision was summary in nature, petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for [its] decision." *Cullen*, 131 S. Ct. at 1402 (*quoting Richter*, 131 S. Ct. at 786). Petitioner has not met that high threshold.

At a hearing on the morning of trial (outside the presence of the jury), the parties made arguments concerning the admissibility of the audiotape of petitioner's post-arrest conversation with Ms. Pontiff. (Doc. 20, Ex. B, p. 30). The State wanted the jury to hear petitioner's statements on the tape, and the defense agreed that petitioner's statements were admissible. The defense requested, however, that Ms. Pontiff's statements be redacted. The State attempted to redact Pontiff's statements, but found it impossible because both petitioner and Ms. Pontiff spoke at the same time during most of the tape. The State proposed an alternative – that a police officer read a transcript of petitioner's statements. (*Id.*, p. 31). Petitioner objected to a police officer testifying as to petitioner's statements because "the detective wasn't there when the tape recording was made so . . . he would be listening to the tape just like the jury would." (*Id.*). Defense counsel concluded:

> I think the state of the law is that it can be played as [petitioner's] statements. We discussed before that Pontiff's [statements] need to come off and that's where we stand. I don't believe that the officer can testify as to what he heard. I think the best evidence is the tape.

(*Id.*, p. 34). The trial court ruled:

> THE COURT: If you want the tape, the tape can be played. The fact, I mean, he's responding to her and after a while you can hear more than just a verb turn into an adjective. I understand what he's saying in response to her comments and he's in the back of apparently they are in the back of a police car. That's not a place where one would expect

privacy, um, because they are in custody, they are both upset. He makes his remark. I can't believe I am F, and et cetera, they have got everything, all those kinds of comments, I think the jury is entitled to hear. Now I think you ought to quit it when it starts getting into googly guck when it's totally incomprehensible but I think [it's] permissible for the jury to hear it, particularly if the defense is she's trying to plot and he's trying to plot to say it's all his as opposed to hers, and he keeps saying, why weren't you driving, why weren't you driving, so I think all that is something the jury can hear, so I am going to allow them to play it, but turn it off at –

MR MEREDITH [defense counsel]: Including Ms. Pontiff's statements?

THE COURT: I don't know how you can take it out, especially if they are talking both at the same time. There's no way to delete it, as a practical matter. People have a conversation, they talk over each other, particularly her, she was rather upset, to put it mildly, and he's talking over her comments. We have the radio squawking with comments. There's no way to do that, to delete it. If they were having a conversation, question and answer, you can take one person's out but the fact they were both talking makes no sense in a vacuum, so I think it's admissible.

MR. MEREDITH: I guess that's the whole point, the confrontation clause would allow us to cross examine anybody that testifies against him.

THE COURT: But he's the one testifying, he's the one talking and we are gonna tell [the jury] to only consider what his comments were, not hers. You didn't want somebody to testify as to what he said. You wanted the tape played so if you want the taped [sic] played, you get it with – you get all of it. So you can't have parts of it, especially since you can't do it, so I am gonna allow the tape to be played.

(*Id*. pp. 34-35).

Admission of Ms. Pontiff's statements did not violate the Confrontation Clause or the holding in *Crawford*, because Pontiff's statements were not testimonial. Ms. Pontiff's statements were not made under formal circumstances (such as police interrogation), but rather were made to petitioner under circumstances which would not lead an objective witness reasonably to believe that the statements would be available for use at a later trial. *See Crawford*, 541 U.S. at 51, 124 S. Ct. 1354 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). Petitioner's reliance on *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968) is also misplaced. In *Bruton*, the United States Supreme Court held that "a defendant is deprived of his rights under the Confrontation Clause when his non-testifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Id.* at 137, 88 S. Ct. 1620. Because the *Bruton* rule is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause, does not apply to nontestimonial statements. *See Davis v. Washington*, 547 U.S. at, 126 S. Ct. 2266 (noting that the statements at issue in *Bruton* were testimonial in that they were made during a custodial interrogation). *Bruton* is further distinguishable because Ms. Pontiff was not petitioner's co-defendant in a joint trial. *See Cargill v. Turpin*, 120 F.3d 1366, 1374 n.16 (11th Cir. 1997) (habeas case distinguishing *Bruton* on that basis); *see also United States v. Valdes-Fiallo* 213 F. App'x 957, 960 (11th Cir. 2007) (same); *United States v. O'Sullivan*, 361 F. App'x 993, 997 n.1 (11th Cir. 2010) (same).

The state courts' rejection of petitioner's Confrontation Clause claim was not contrary to, or an unreasonable application of, clearly established Federal law.

Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five          "The State Court Erred In Denying Petitioner's Claim That
                     Counsel Was Ineffective For Failing To Object To The
                     Prosecution[']s Improper Closing Remarks In Violation Of The
                     Fifth, Sixth, And Fourteenth Amendments To The United States
                     Constitution." (Doc. 1, continuation pages 10-11).

        Petitioner faults defense counsel for failing to object the following remarks by

the prosecutor during closing argument:

> And I would ask that when you look at all of the evidence, and when
> you are listening specifically, listen to the Defense's final closing
> argument, and you should listen to it, listen to it and evaluate it like you
> would evaluate any closing argument, and say to yourself, is what is
> being said come into evidence, is this a reasonable doubt, because
> reasonable doubt means something came in evidence that gives you a
> reasonable doubt, it's a doubt all of the rest of the evidence, or is this
> just a possible doubt that we are talking about, is this a speculative, or
> we're speculating that maybe somebody else did it.  Did any of that
> evidence come in today, and I would say, no, nothing came in through
> that window, which is right there, the witness seat.  That's the only place
> that evidence comes in.  It doesn't come in from what I am saying, it
> does not come in from what the defense is saying, it comes in through
> that evidence and I am saying when you are thinking about that is this
> a reasonable doubt, and I think once you do that, there's only one
> possible decision and that the Defendant in this case, Mr. Durkin, is
> guilty as charged.

(Ex. B, pp. 173-74).  The prosecutor's remarks came after defense counsel closed his

initial closing argument by stating:

> So we are still left with the question of whose pills were they?  I don't
> know.  The State has not proven their case.  Were they Miss Pontiff's?
> I don't know.  I do know she ran.  I do know she had a pill in her
> possession.  But they certainly have not prove, proven beyond a
> reasonable doubt, that Mr. Durkin was in possession of this, or even
> knew they were there, so the only verdict that you can return, the only

lawful verdict based on the evidence that you have heard as to the eight different counts that involve the drugs is not guilty.

(Doc. 20, Ex. B, pp. 161-62).

Petitioner argues that defense counsel should have objected on the grounds that the prosecutor improperly shifted the burden of proof by "lead[ing] the jury to believe that it is a defendant's responsibility to prove his innocence." (Doc. 1, continuation pages 10-11).

Respondent concedes that petitioner exhausted his state court remedies with respect to this claim by presenting it in his first Rule 3.850 proceeding (doc. 20, p. 54), but argues that petitioner is not entitled to federal habeas relief because the state courts' rejection of petitioner's claim was consistent with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). (Doc. 20, pp. 54-58).

A.     Clearly Established Federal Law

In *Strickland v. Washington*, the Supreme Court set out a two-part inquiry for ineffective assistance claims. A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are

mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

### B.    Federal Review of State Court Decision

Petitioner raised this claim as Ground One of his first Rule 3.850 motion. (Doc. 33, Ex. G, pp. 1-15). The postconviction court denied relief on the merits on January 25, 2008, as follows:

> The Defendant alleges counsel was ineffective for failing to object to the State's closing argument. The Defendant claims that the comments by the State improperly shifted the burden of proof and were impermissible comment on his right to silence. (Transcript 173, 174). During the Defense's closing argument, defense counsel argued reasonable doubt and the State pointed out that the evidence presented did not support reasonable doubt. There were no comments on Defendant's failure to testify. Additionally, there were no comments that shifted the burden of proof. The State properly referred to evidence as it existed before the jury and to point out that there is an absence of evidence on a certain issue. *White v. State*, 377 So.2d 1149 (Fla. 1980). Defense counsel was not ineffective for failing to object to proper comments

on the evidence presented and the defense raised.

. . . .

The record directly refutes the defendant's claims of ineffective assistance of counsel. The Defendant has failed to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668 (1984), test regarding ineffective assistance of counsel.

(*Id.*, pp. 37-38). The First DCA summarily affirmed.

The state court correctly identified *Strickland*, and reasonably applied *Strickland* when analyzing petitioner's claim. As for *Strickland*'s performance prong, the prosecutorial statements at issue did not shift the burden of proof, but instead explained reasonable doubt, properly commented on defense counsel's argument that the State failed to prove beyond a reasonable doubt that the drugs were petitioner's, and directed the jury that the case must be decided only upon the evidence heard from the testimony of witnesses and seen in the form of exhibits in evidence. Because there was no prosecutorial misconduct with regard to any of the allegedly burden-shifting comments made during closing arguments, counsel could not have been ineffective for failing to make an objection or move for a mistrial on that basis, and petitioner cannot show he was prejudiced by counsel's failure to object.[6]

---

[6]Even if the prosecutor's comments were improper, petitioner cannot show there is a reasonable probability the result of his trial would have been different had counsel objected, given that <u>after</u> the prosecutor's comments were made, the trial judge explicitly instructed the jury that: (1) petitioner was not required to present evidence or prove anything (doc. 20, ex. B, p. 189); (2) the Constitution required the State to prove its accusations against petitioner, and it was up to the State to prove petitioner's guilt by evidence (*id.*, pp. 190, 191); (3) petitioner was not required to disprove anything or to prove his innocence (*id.*, p. 191); and (4) the jury must follow the judge's instructions in order to return a lawful verdict (*id.*).

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Five.

Ground Six        <u>"The State Court Erred By Denying Petitioner's Claim That Counsel Was Ineffective For Failing To Move To Dismiss Count II Of The Information In Violation Of The Fifth Sixth And Fourteenth Amendments To The United States Constitution."</u> (Doc. 1, continuation page 12).

Petitioner alleges that Count II of the amended information (trafficking in Codeine) was identical to Count I (trafficking in Hydrocodone), and claims trial counsel was ineffective for failing to move to dismiss Count II on double jeopardy grounds. (Doc. 1, continuation page 12). Petitioner asserts that he exhausted this claim by raising it in his first Rule 3.850 proceeding. (*Id.*).

Respondent concedes that petitioner exhausted his state court remedies with respect to this claim by presenting it in his first postconviction proceeding (doc. 20, p. 59), but argues petitioner is not entitled to federal habeas relief because the state courts' rejection of the claim was consistent with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). (Doc. 20, pp. 59-62).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is set forth above.

B.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Two of his first Rule 3.850 motion. (Doc. 33, Ex. G, pp. 1-15). The postconviction court denied relief on the merits on January 25, 2008, as follows:

The Defendant alleges counsel was ineffective for failing to timely file a Motion to Dismiss Count Two of the charging Information. He alleges that Count Two of the Information was duplicitous of Count One, and Count Two would have been dismissed had defense counsel filed a pre-trial Motion to Dismiss. At trial, evidence was presented to prove that the Defendant was guilty of trafficking in hydrocodone as charged in Count One of the Information (Transcript 129) and was guilty of trafficking in codeine as charged in Count two of the Information (Transcript 132). Although the trial Judge did express that the wording of the Information was confusing, she found that the State had presented evidence to support each count of the Information. (Transcript 141, 142). Even if defense counsel had filed a Motion to Dismiss, the State would have amended the Information to specifically state hydrocodone in Count One and codeine in Count Two. The Defendant has failed to show that counsel was deficient or that he was prejudiced by defense counsel's failure to file a pre-trial Motion to Dismiss Count Two.

The record directly refutes the defendant's claims of ineffective assistance of counsel. The Defendant has failed to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668 (1984), test regarding ineffective assistance of counsel.

(*Id.*, p. 38). The First DCA summarily affirmed.

As with Ground Five above, the state courts' rejection of petitioner's claim was not "contrary to" clearly established federal law, because the state court applied the two-pronged standard identified by the Supreme Court in *Strickland*, 466 U.S. 668 (1984). There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state courts.

The state courts' rejection of petitioner's claim did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. The Fifth Amendment's double jeopardy clause provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S.

Const. Amend. V. This guarantee against double jeopardy "consist[s] of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (1969). Petitioner's proposed double jeopardy challenge is rooted in the latter of these three protections; *i.e.*, multiple punishments for the same offense. *Missouri v. Hunter*, 459 U.S. 359, 365-66, 103 S. Ct. 673, 677-78, 74 L. Ed. 2d 535 (1983); *see also* Art. I, § 9, Fla. Const.; *Valdes v. State*, 3 So. 3d 1067, 1069 (Fla.2009) (explaining that double jeopardy "prohibits subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense"). "Multiplicity" is the charging of a single offense in more than one count. A multiplicitous-indictment challenge is subject to the same standard as a double jeopardy challenge. The test to be applied to determine whether there are two offenses or only one, is the classic *Blockburger* analysis, *Blockburger v. United States*, 204 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), whether each provision requires proof of a fact which the other does not. Charges in an indictment are not multiplicitous if the charges differ by even a single element or alleged fact.

In the present case, Count I of the Second Amended Information charged that petitioner:

> did unlawfully and knowingly sell, manufacture, deliver, or bring into the State of Florida, or was in actual or constructive possession of 28 grams or more of any morphine, opium, oxycodone, **hydrocodone** or any salt, derivative, isomer, or salt of an isomer thereof, including heroin, as described in Florida Statute 893.03(2)(a), or 4 grams or more of any mixture containing any such substance, contrary to Florida Statute 893.135(1)(c)1c.

(Doc. 20, Ex. A, p. 27) (emphasis added). Count II of the Second Amended Information charged petitioner with trafficking in a controlled substance, using language nearly identical to Count I, except that: (1) Count II omitted "hydrocodone" from the list of drugs, and (2) Count II identified the controlled substance as one "described in Florida Statute 893.03(1)(b) or (2)(a)". (Ex. A, p. 27). As the state court reasonably determined, there was no multiplicity, because the two counts involved different controlled substances. Count I charged trafficking in Hydrocodone, and Count II charged trafficking in a controlled substance other than Hydrocodone. Each charge required proof of a fact (the particular controlled substance) that the other did not. Petitioner's simultaneous trafficking of two different controlled substances constitutes two separate "acts" and thus two separate offenses for which multiple sentences may be imposed. *Cf. United States v. Davis*, 656 F.2d 153 (5th Cir. Unit B Sept. 1981) (rejecting double jeopardy claim of defendant who was convicted of two counts of violating same statute for his simultaneous possession with intent to distribute marijuana and quaaludes; Congress intended to permit trial courts to penalize possession of "each" controlled substance; defendant's simultaneous possession of different controlled substances constituted two acts and thus two separate offenses for which consecutive sentence may be imposed).

Further, as the state court reasonably determined, petitioner could not establish prejudice because even if counsel had moved to dismiss Count II on double jeopardy grounds, there is no reasonable probability the outcome of the trial would have been different, because the State could simply have amended the wording of the charging document to clarify that Count II related to the Codeine rather than the Hydrocodone.

*See State v. Anderson*, 537 So. 2d 1373, 1375 (Fla. 1989) (providing that "the state may substantively amend an information during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant."); *Glasserman v. State*, 590 So. 2d 17 (Fla. 4th DCA 1991) (finding that trial judge did not abuse his discretion when he granted State's request to amend the charging information).

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Six.

Ground Seven     <u>"The State Court Erred By Not Finding Defense Counsel Ineffective for Failing To Move For A Competency Evaluation Prior To Trial In Violation Of The Fifth, Sixth, And Fourteenth Amendments To The United States Constitution"</u> (Doc. 1, continuation pages 13-14).

Petitioner claims his trial counsel was ineffective for failing to seek a competency evaluation prior to trial. In support of this claim, petitioner alleges that he has had a life-long struggle with psychiatric disorders beginning at an early age; that beginning in elementary school he has been treated in both in- and out-patient care facilities both voluntarily and by court order; that after his arrest and while awaiting trial in the instant Bay County criminal case he was treated for psychiatric disorders in the county jail; and that petitioner's sister wrote to trial counsel "expressing these concerns". (Doc. 1, continuation page 14). Petitioner asserts that he raised this claim in his first Rule 3.850 motion (as Ground Three); that the state circuit court appointed Mr. Jonathan Dingus to represent petitioner and scheduled an evidentiary hearing; that Mr. Dingus sought, and was granted "a prehearing mental

evaluation" of petitioner; that Mr. Dingus later withdrew and the mental evaluation was never conducted; and that petitioner's new court-appointed counsel, Mr. David Collins, declined to pursue the mental evaluation of petitioner even though the state court offered to continue the postconviction evidentiary hearing to allow for the evaluation. Petitioner asserts that "[postconviction] counsel [Mr. Collins] declined and told the petitioner an evaluation was unnecessary, because any findings could not be applied retroactive[ly] and continued with the hearing." (*Id.*). Petitioner complains that the state circuit court "allowed counsel to waive, erroneously and irresponsibly, the prehearing evaluation." (*Id.*).

Respondent construes petitioner's claim as an ineffective assistance of postconviction counsel claim, and asserts that the claim is unexhausted and procedurally defaulted because petitioner did not present an ineffective assistance of postconviction counsel claim to the state courts. (Doc. 20, pp. 62-67).

Petitioner replies that his claim is one of ineffective assistance of <u>trial</u> counsel. (Doc. 30, pp. 12-14).

The Court liberally construes petitioner's petition and reply as confirming that petitioner is raising an ineffective assistance of <u>trial</u> counsel claim – the same claim petitioner presented to the state courts as Ground Three in his first amended Rule 3.850 motion. Petitioner cannot seek federal habeas relief on the ground of ineffective assistance of postconviction counsel, because that is not a viable basis for recovery under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1343 (11th Cir. 2007).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of trial counsel is set forth above.

B.    Federal Review of State Court Decision

Petitioner raised the issue of trial counsel's failure to seek a competency evaluation as Ground Three of his amended Rule 3.850 motion (filed in the first Rule 3.850 proceeding).  (Doc. 33, Ex. G, pp. 63-71).  The state court denied relief after an evidentiary hearing, as follows:

> At the [postconviction evidentiary] hearing, the Defendant was represented by attorney David Collins.  The Defendant argued that Mr. Meredith [petitioner's trial counsel] failed to have the Defendant evaluated for competency prior to trial and that Mr. Meredith was told by the Defendant's sister that the Defendant had severe mental illness stemming from childhood.  Mr. Meredith testified that the Defendant was able to participate in the defense, the Defendant appeared to understand the charges against him, the Defendant wrote intelligible letters to Mr. Meredith, and that the Defendant had coherent conversation with Mr. Meredith throughout the discovery and trial process.  Mr. Meredith visited the Defendant ten times prior to trial.  Mr. Meredith testified that although his client appeared depressed and was aware the Defendant was taking medications for depression, he did not think this client exhibited any behavior that would warrant an evaluation for competency.  Rule 3.210 Fla. R. Crim. P. states that the court on its own motion, or on motion of counsel for either the defendant or state, "has reasonable ground to believe that the defendant is not mentally competent to proceed," the court shall immediately enter an order setting a hearing to determine competence.  The State argued that the Defendant has been convicted and served his five year sentence prior to the case at bar.  The Defendant even testified that the court in his prior case ordered him to have an evaluation and he was still convicted and still served his five year sentence.  Mr. Meredith knew of the Defendant's prior record.  Mr. Meredith's testimony of the Defendant's behavior along with Mr. Meredith's knowledge of the Defendant's prior record leads this Court

to the conclusion that Mr. Meredith had no reasonable grounds to have
the Defendant evaluated prior to trial and therefore Ground Three of the
Defendant's motion is denied.

(Doc. 20., Ex. G, pp. 527-28).  The First DCA summarily affirmed.

The Court has reviewed the postconviction record, including the evidentiary
hearing transcript and petitioner's sister's affidavit (which was attached to
petitioner's amended Rule 3.850 motion (doc. 33, ex. G, p. 71), and admitted into
evidence at the postconviction evidentiary hearing (doc. 20, ex. H, p. 29)).  The state
court's findings of fact, including its implicit determination that Mr. Meredith's
testimony was credible, are presumed correct.  28 U.S.C. § 2254(e); *see also*
*Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011)
("Determining the credibility of witnesses is the province and function of the state
courts, not a federal court engaging in habeas review.  Federal courts have 'no license
to redetermine credibility of witnesses whose demeanor has been observed by the
state trial court, but not by them.'") (*quoting Marshall v. Lonberger*, 459 U.S. 422,
103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983)); *see also Consalvo*, 664 F.3d at 845
("We consider questions about the credibility and demeanor of a witness to be
questions of fact.").  Petitioner has not rebutted the presumption of correctness with
clear and convincing evidence to the contrary, and has not shown that the state court's
findings are unreasonable.

This Court has no reason to disturb the state courts' decision under the AEDPA
standard of review.  Courts evaluating a claim of ineffective assistance of counsel
conduct a highly deferential review of counsel's performance and "'indulge the
strong presumption' that counsel's performance was reasonable and that counsel
'made all significant decisions in the exercise of reasonable professional judgment.'"

*Chandler v. United States*, 218 F.3d 1305, 1314 (alteration in original) (*quoting Strickland*, 466 U.S at 689-90, 104 S. Ct. at 2065-66). In *Strickland*, the Supreme Court addressed claims that counsel failed to investigate and present mitigation evidence. As to counsel's investigation, the Supreme Court explained:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91, 104 S. Ct. at 2066.

The state court concluded, reasonably, that trial counsel made a reasonable investigation of petitioner's competence and reasonably determined there was no basis to pursue a competency evaluation. Mr. Meredith testified that although petitioner's sister told him that petitioner "had a tough childhood, a lot of setbacks", petitioner's sister did not disclose any facts indicating petitioner suffered from a mental illness affecting petitioner's mental competence to proceed. (Doc. 20, Ex. H, pp. 540, 547, 440). With regard to the traumatic events in petitioner's childhood, Mr. Meredith was aware that notwithstanding the childhood trauma, petitioner had been tried, convicted, sentenced and served prison time in another criminal proceeding that preceded petitioner's arrest in this case. Petitioner did not report the existence of any competency issues relating to the prior criminal proceeding. (*Id.*, pp. 538-39). In addition to considering information about petitioner's past, Mr. Meredith met with petitioner in person approximately ten times during the six-month period preceding

trial, and corresponded with petitioner by letter.  Mr. Meredith testified that although petitioner told him he was depressed (*id*., pp. 550-51), petitioner's alleged depression did not appear to affect petitioner's ability to assist in the case and did not cause counsel to question petitioner's competence, as petitioner was alert and coherent during discussions with counsel; petitioner responded intelligently to questions and had a clear understanding of the nature of the charges and the proceedings against him; and petitioner actively participated in his defense, including proposing bases for possible suppression of evidence, discussing trial strategy, and advising counsel of potential witnesses.  (*Id*., pp. 535-39, 552-53).  Given the results of counsel's investigation and personal interactions with petitioner, a reasonable lawyer could have decided, under the circumstances, that there was not a valid basis to question petitioner's competence to proceed or to pursue a competency evaluation.

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court.  Petitioner is not entitled to federal habeas relief on Ground Seven.

| | |
|---|---|
| Ground Eight | "The Trial Court Erred Denying Relief Where Petitioner Asserts Counsel Was Ineffective For Failing To Challenge The Prejudicial Value Of A Tape Recording Played at Trial In Violation Of The Fifth, Sixth, And Fourteenth Amendments To The United States Constitution." (Doc. 1, continuation pages 15-16). |

Petitioner asserts that trial counsel mishandled the defense challenge to admission of the audiotape of petitioner's conversation with Ms. Pontiff that took place in the back seat of the police car.  Petitioner argues that instead of objecting to the State's proposal (that a police officer read petitioner's statements) and interposing

a Confrontation Clause objection to admission of the audiotape, defense counsel should have either allowed the officer to read petitioner's statements, or objected to the admission of the audiotape on undue prejudice grounds (that the prejudicial effect of the audiotape, which included Ms. Pontiff's "drunken diatribe" against petitioner, far outweighed its probative value). (Doc. 1, continuation pages 15-16). The parties agree that petitioner exhausted this claim by presenting it to the state courts as Ground Six of petitioner's amended Rule 3.850 motion (filed in the first Rule 3.850 proceeding). (Doc. 1, p. 15-16; Doc. 20, p. 68). Respondent asserts that federal habeas relief should be denied, because the state court did not unreasonably determine the facts or mis-apply *Strickland*, in rejecting petitioner's claim. (Doc. 20, pp. 68-69).

    A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of trial counsel is the *Strickland* standard, as set forth above.

    B.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Six of his amended Rule 3.850 motion. (Doc. 33, Ex. G, pp. 122-31). The state court denied relief as follows:

> As to Ground Six of the Defendant's motion, the Defendant alleges that Mr. Meredith failed to object to the introduction of a tape containing a recorded conversation between the Defendant and his Co-Defendant while they were in the back of the police car. Mr. Meredith did object to the introduction of the tape on the grounds that it violated the Defendant's Sixth Amendment rights. The Court overruled Mr. Meredith's objection and the tape was introduced as evidence. Mr. Meredith did not fail to object and his objection was recorded on the record. Therefore, the allegations in Count Six of the Defendant's motion [are] denied.

(Doc. 20., Ex. G, p. 528). The First DCA summarily affirmed.

Defense counsel testified at the postconviction evidentiary hearing that the prosecutor provided him with a copy of the audiotape prior to trial. (Doc. 20, Ex. H, p. 541). There was no transcript. Counsel listened to the tape and, because "Ms. Pontiff certainly did not help Mr. Durkin," asked the prosecutor to redact Ms. Pontiff's voice from the recording so that only petitioner's voice could be heard. (*Id*.). The trial transcript reflects that on the eve of trial, the prosecutor notified defense counsel that she was unable to redact Ms. Pontiff's voice from the audiotape. (Doc. 20, Ex. B, p. 30). The prosecutor informed the trial court of the problem on the morning of trial and proposed that "I think that the detective, like if there was a spontaneous statement or if he heard the conversation inside the car, this is a capturing of that conversation, he should be able to testify to the Defendant's statements only." (*Id*.). Defense counsel responded:

> MR. MEREDITH [defense counsel]: Judge, the detective wasn't there when the tape recording was made so he's just, he would be listening to the tape just like the jury would.

> THE COURT: Therefore, you agree to have the tape.

> MR. MEREDITH: Well, anything he says would just be opinion, as to what is said. . . . [W]e don't want the officer testifying as to what he said, we want the jury to hear. If there are things going over each other, as long as it's Mr. Durkin's statement, you know, they need to hear that and decide for themselves what he's saying. As far as the statements that Ms. Pontiff makes that are not, they're not talking over, I think those need to be redacted.

(*Id*., p. 31). After the lawyers played the tape for the trial judge, defense counsel argued: "I think the state of the law is that it can be played as Mr. Durkin's statements. We discussed before that Ms. Pontiff's need to come off and that's where we stand. I don't believe that the officer can testify as to what he heard. I think the

best evidence is the tape." (*Id.*, p. 34). The judge ruled that the she could discern some of petitioner's statements on the tape, that they were admissible, and that:

> THE COURT: . . . I think the jury is entitled to hear. Now I think you ought to quit it when it starts getting into googly guck when it's totally incomprehensible but I think [it's] permissible for the jury to hear it, particularly if the defense is she's trying to plot and he's trying to plot to say it's all his as opposed to hers, and he keeps saying, why weren't you driving, why weren't you driving, so I think all that is something the jury can hear, so I am going to allow them to play it, but turn it off at --

(*Id.*, pp. 34-35). Defense counsel made a Confrontation Clause objection (as discussed in Ground Four above). The trial court essentially gave defense counsel the choice between having the audiotape played or having the police officer read petitioner's statements. (*Id.*, p. 35). Defense counsel found neither alternative acceptable and requested a continuing objection to the audiotape being played. (*Id.*, p. 36). The trial judge noted counsel's continuing objection for the record.

At the postconviction evidentiary hearing, trial counsel Mr. Meredith was questioned about his strategy with regard to the audiotape. Mr. Meredith explained:

> A: Judge Costello allowed – she gave me a choice of the officer testifying or the tape recording being played. I said neither one of those was acceptable and the recording was allowed in.
>
> Q [by Assistant State Attorney Stalcup]: Okay. And your objection was based on trying to keep it out, completely out?
>
> A: Well, strategically, yes, because it didn't help Mr. Durkin. And the grounds, obviously, were that we could[n't] confront Ms. Pontiff because she had violated the terms of her bond and had fled, so she wasn't around for us to cross examine. I was trying anything to keep the whole thing out.

(Doc. 20, Ex. H, p. 542).

Petitioner's argument, in his Rule 3.850 motion and here, is that counsel should have either agreed to allow the police officer to read petitioner's statements, or interposed a different objection – an objection under Fla. Stat. § 90.403 that the probative value of the audiotape was substantially outweighed by the danger of unfair prejudice to petitioner. Petitioner argued in his appeal of the state circuit court's order that the court erred in denying relief on his claim because his claim was not that counsel failed to object, but that counsel failed to interpose the <u>appropriate</u> objection. (Doc. 20, Ex. I, pp. 20-25).

To the extent petitioner asserts counsel should have allowed the officer to read petitioner's statements because they were not inculpatory, petitioner's self-serving contention is belied by the record and by petitioner's own allegations in this proceeding. Defense counsel testified at the postconviction evidentiary hearing that the defense did not want any part of the audiotape to come in (doc. 20, ex. H, p. 542), and that petitioner asked counsel to attempt to suppress his statements on *Miranda* grounds (*id.*, p. 551). Further, petitioner admits in the allegations supporting Ground Four of his petition that one of his statements captured on the audiotape was, "I'm going to prison." (Doc. 1, continuation page 8).

As to petitioner's argument that counsel should have objected under Fla. Stat. § 90.403, instead of the Confrontation Clause, "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Richter*, 131 S. Ct. at 791 (*quoting Strickland*, 466 U.S. at 687). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Richter*, 131 S. Ct. at 791 (*quoting Strickland, supra*, at 686). "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable

miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 131 S. Ct. at 791.

Here, petitioner's attorney made a reasonable effort to keep Ms. Pontiff's statements, as well as the whole the audiotape, out. Counsel interposed appropriate objections, objections that a reasonable attorney would make. The fact that counsel's strategy was unsuccessful does not mean it was unreasonable. "The Supreme Court has recognized that defense counsel in defending their client's interests, need not urge every conceivable objection the law would provide." *Hubbard v. Haley*, 317, F.3d 1245, 1259 (11th Cir. 2003) (*citing Engle v. Isaac*, 456 U.S. 107, 133-34, 102 S. Ct. 1558, 1575, 71 L. Ed. 2d 783 (1982)). Petitioner has not shown that it is indisputable that *Strickland* required his attorney to interpose an additional (or alternative) objection under Fla. Stat. § 90.403.

The state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Eight.

| Ground Nine | "The Lower Court Erred By Summarily Denying Petitioner's Claim That Evidence Found to Be False And Resulted In A Guilty Verdict Was Not Newly Discovered Evidence In Violation Of The Fifth, Sixth, And Fourteenth Amendments To The United States Constitution." (Doc. 1, continuation pages 17-18). |

Petitioner's final claim is that he has newly discovered evidence that one of the State's experts testified falsely. Petitioner alleges in support of this claim that the Florida Department of Law Enforcement's Chemical Analyst, Samuel Catalani, testified that after conducting tests on the drugs found in the vehicle, all of the drugs were a "pure" form (as opposed to an alloy or mixture) of Hydrocodone, Codeine and

Amphetamine. Petitioner asserts that this aspect of Catalani's testimony "has since been found to be false", and that this "false" testimony prejudiced him because it established the element of drug weight and "resulted in an incorrect verdict and the false weight influenced sentencing as well." (Doc. 1, continuation page 17). Petitioner asserts that he exhausted this claim by raising it in his second postconviction proceeding which he initiated in October of 2010. (Doc. 20, Ex. N).

 Respondent asserts a procedural default defense. Respondent concedes that petitioner raised this claim in his second postconviction proceeding initiated in 2010, but asserts that the trial court dismissed petitioner's claim as procedurally barred, because the second Rule 3.850 motion was untimely and petitioner failed to meet the standard for newly discovered evidence.

Petitioner concedes in his reply that the state court did not reach the merits of his claim, but argues that the state court's ruling was unreasonable, because it could not have made the finding that the evidence did not qualify as "newly discovered evidence" without holding an evidentiary hearing. (Doc. 30, p. 17). Petitioner further argues that this Court should review the merits of his claim notwithstanding his procedural default, because "[t]o allow a procedural bar to block review of the erroneous evidence in this case is tantamount to a fundamental miscarriage of justice." (*Id.*, pp. 18-20).

A.    Exhaustion and Procedural Default

Petitioner raised his "newly discovered evidence" claim in a postconviction proceeding that succeeded his first Rule 3.850 proceeding. (Doc. 20, Ex. N, pp. 55-68). The state circuit court denied relief, in relevant part, as follows:

> On November 19, 2007, the Defendant filed his first motion for
> postconviction relief, which the court ultimately denied on March 10,

2010 after allowing the Defendant to file several amendments to the initial motion and holding an evidentiary hearing.

On October 5, 2010, the Defendant filed another Rule 3.850 motion alleging newly discovered evidence in order to overcome the procedural bars against filing untimely and successive motions for postconviction relief. However, as the Defendant's claim was facially insufficient, this court issued an order striking his Rule 3.850 motion, allowing him thirty days to amend his claims pursuant to Spera v. State, 971 So. 2d 754 (Fla. 2007).

In the instant amended motion, the Defendant alleges that the drug evidence "considered by all parties receiving this evidence from . . . [the] Florida Department of Law Enforcement as truth, has just been discovered as false." Defendant states that he made this discovery on August 14, 2010, while reviewing an April 12, 2006 amended lab report submitted to the FDLE. The Defendant then proceeds to critique Crime Lab Analyst Samuel Catalani's trial testimony, contending that Mr. Catalani lied and falsified evidence. To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements: First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. See Jones v. State, 708 So. 2d 512, 521 (Fla. 1998) (Jones II). The Defendant does not dispute that this evidence was known to counsel at the time of trial. Instead, [t]he Defendant claims that defense counsel was "deceived by the presentation of this falsified evidence." It is clear that the matters disputed in the instant motion do not qualify as newly discovered evidence. The Defendant seeks only to argue the underlying facts which the Defendant himself admits were fully presented at trial. Allegations challenging the factual basis and sufficiency of the evidence cannot be raised in a motion for postconviction relief, especially where a direct appeal was taken. Betts v. State, 792 So. 2d 589 (Fla. 1st DCA 2001). Accordingly, the Defendant's motion is due to be denied.

(Ex. N, pp. 69-70). The First DCA summarily affirmed.

The record confirms that the state court denied relief on the ground of an independent state procedural bar. Florida's rule prohibiting the filing of untimely and successive postconviction motions is firmly established and regularly followed. *See* Fla. R. Crim. P. 3.850(b) (providing a two-year limitations period); Fla. R. Crim. P. 3.850(f) (barring the filing of second or successive postconviction motions). Florida's rule prohibiting postconviction review of claims that could have or should have been raised at trial and, if properly preserved, on direct appeal, is also firmly established and regularly followed. *See* Fla. R. Crim. P. 3.850(c). Petitioner has not overcome his procedural default by establishing the requisite cause for his procedural default, or by making the requisite showing under *Schlup* to invoke the miscarriage of justice exception. Petitioner's procedural default bars federal habeas review of Ground Nine.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of

appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Joseph T. Durkin* in the Circuit Court for Bay County, Florida, Case Number 05-CF-3266 be DENIED, and the Clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 30th day of September, 2013.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).